**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

DONALD K. KLEPPER, and
KAREN H. HAGGLUND,            CV 11-41-M-DWM-JCL

         Plaintiffs,

    vs.                 FINDINGS & RECOMMENDATION
                              OF UNITED STATES
MONTANA DEPARTMENT OF     MAGISTRATE JUDGE
TRANSPORTATION; and
M.A. DEATLEY CONSTRUCTION,

         Defendants.

_____

Before the Court is Defendant M.A. DeAtley Construction, Inc.'s ("M.A. DeAtley") Fed. R. Civ. P. 56 motion for partial summary judgment upon some of Plaintiffs Donald Klepper and Karen Hagglund's claims. For the reasons stated, the Court recommends that the motion be denied as to Plaintiffs' claims for negligence, private nuisance, and trespass. The motion should be granted as to Plaintiffs' claims of public nuisance, strict liability, breach of contract, and for violations of the Montana Constitution and the United States Constitution.

## I.    INTRODUCTION

Plaintiffs Donald Klepper and Karen Hagglund are proceeding pro se in this action seeking compensation for damages that allegedly occurred to real property

1

they own in Evaro, Montana.  During the winter in 2009, M.A. DeAtley was performing construction work for the Montana Department of Transportation on U.S. Highway 93 and Evaro-McClure Road adjacent to Plaintiffs' property. Specifically, M.A. DeAtley was performing "demucking" work — removing topsoil and clay, and replacing it with drain material — for purposes of relocating a railroad bed.

M.A. DeAtley installed straw wattles to help filter sediment from water draining away from the demucking work site.  During a thaw on March 18, 2009, the straw wattles became loose which allowed sediment and surface runoff water from the work site to flow onto Plaintiffs' property.  Plaintiffs contend the discharge of water and sediment contained toxins, fuel hydrocarbons, polychlorinated biphenyls, heavy metals, and other materials that contaminated the soil and groundwater on their property.

Invoking federal question jurisdiction, 28 U.S.C. § 1331, Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of their federal constitutional rights. And invoking diversity jurisdiction, 28 U.S.C. § 1332, they advance the following claims under Montana law:  (1) negligence, (2) public nuisance, (3) private nuisance, (4) trespass, (5) strict liability for abnormally dangerous activity, (6) breach of contract, and (7) violations of the Montana Constitution.

## II.    APPLICABLE LAW - Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). While the material presented in summary judgment proceedings "does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence[]" later at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). Restated, the facts on which the non-movant may rely must be admissible at trial, but need not be in admissible form as presented in the non-movant's opposition. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

To be admissible, any specific item of documentary evidence must be authenticated by other evidence sufficient "to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of America, NT & SA*, 285

F.3d 764, 773 (9th Cir. 2002). Evidentiary materials or exhibits may be "authenticated by affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). *See also Orr*, 285 F.3d at 774 (adding that authentication may occur by any manner permitted by Fed. R. Evid. 901(b) or 902). Absent proper authentication, however, a court may not consider the exhibit in ruling on a summary judgment motion. *Orr*, 285 F.3d at 773 (citing cases).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Finally, because Plaintiffs are proceeding pro se the court must construe their documents liberally and give them "the benefit of any doubt." *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

## III.  DISCUSSION

### A.  Federal Question Jurisdiction - United States Constitution - 42 U.S.C. § 1983

Plaintiffs advance federal claims against M.A. DeAtley alleging it violated

their rights to due process and equal protection as guaranteed them by the Fourteenth Amendment to the United States Constitution. Further, Plaintiffs contend M.A. Deatley violated provisions of the National Environmental Policy Act, 42 U.S.C. § 4321, et seq. For the reasons discussed, however, M.A. DeAtley is not subject to liability for these claims advanced under federal law.

Plaintiffs' federal claims would only be cognizable, if at all, under 42 U.S.C. § 1983. Section 1983 states, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 is the vehicle through which a plaintiff can present claims under federal law against a state official or employee if the plaintiff can establish that the official or employee was acting under color of state law and deprived the plaintiff of a federal right. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Section 1983, however, does not generally apply to the conduct of private parties. *Kirtley*, 326 F.3d at 1092. "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806,

812 (9th Cir. 2010) (quoting *American Manufacturers Mut. Ins. Co. v. Sullivan*,
526 U.S. 40, 50 (1999)).

In limited circumstances, however, a private party's conduct may constitute state action for purposes of imposing liability on a private party under section 1983. The Ninth Circuit Court of Appeals has recognized the following four tests used to identify private action that qualifies as state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley*, 326 F.3d at 1092 (quotation omitted). The fundamental consideration in each test is whether the private conduct is fairly attributable to the state. *Id*. A plaintiff bears the burden of establishing that a particular defendant was a state actor under any applicable test. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

### 1.   Public Function

Under the public function test, a private actor's conduct qualifies as state action where the private actor is endowed with state powers or functions that are traditionally and exclusively governmental in nature. *Kirtley*, 326 F.3d at 1092.

Plaintiffs do not argue that M.A. DeAtley qualifies as a state actor under the public function test. And, there exists no evidence in the record suggesting M.A. DeAtley was exercising any right or privilege under state authority such that it was

"clothed with the authority of state law" in the performance of its road construction activities, or that those activities are "both traditionally and exclusively governmental." *See Villegas v. Gilroy Garlic Festival Association*, 541 F.3d 950, 955 and n.2 (9th Cir. 2008) and *West v. Atkins*, 487 U.S. 42, 49 (1988). To the contrary, construction work is not a function traditionally restricted to state authorities. *White v. Cooper*, 55 F. Supp. 2d 848, 860 (N.D. Ill. 1999).

### 2. Joint Action

A private individual may also "be liable under § 1983 if she conspired or entered joint action with a state actor." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). Joint action may exist where "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011). Joint action requires willful joint participation between the state and private actors wherein "the state knowingly accepts the benefits derived from unconstitutional behavior." *Id*. (citations and quotations omitted).

Plaintiffs argue M.A. DeAtley was engaged in joint action with the Montana Department of Transportation relative to the subject road construction project.

They contend M.A. DeAtley acted as an agent of the State, and acted in concert "with its partner the Montana Department of Transportation[.]" Dkt. 53 at 13.

In support of their arguments, Plaintiffs identify a daily log entry made by some unidentified individual on March 16, 2009, which they contend establishes that the Montana Department of Transportation authorized M.A. DeAtley to release water from the construction site. Dkt. 53, Ex. 5. The exhibit reflects that permission was given by some unidentified person "to relieve standing $H_2O$ on R/R subgrade[.]" *Id.*

The log entry exhibit on which Plaintiffs rely, however, is not sufficient to support their joint action theory. The log entry consists of statements that are not made under oath, and are offered for the truth of the matters asserted in the statements. As such, the statements constitute hearsay, and cannot be considered on summary judgment. *See* Fed. R. Evid. 801(c) and 802; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002).

Furthermore, Plaintiffs have not presented any supporting testimony to authenticate the exhibit and establish that it is what they claim it to be, i.e. authorization to discharge water onto Plaintiffs' property. The log entry reflects permission to relieve water, but it does not expressly authorize the discharge of water onto Plaintiffs' property. Therefore, the exhibit does not raise a genuine

issue of material fact indicating that the Montana Department of Transportation was engaged in the requisite "joint action" with M.A. DeAtley.

Plaintiffs also make the bare assertion that M.A. DeAtley conspired with the Montana Department of Transportation to place sediment on Plaintiffs' property. The assertion, however, is unsupported by any evidentiary materials sufficient to establish the existence of a conspiracy.

A viable claim of a conspiracy to violate a plaintiff's constitutional rights requires facts that establish "'the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1282, 1301 (9th Cir. 1999)). The evidence must demonstrate that each participant "share[s] the common objective of the conspiracy" — the objective to engage in unconstitutional conduct. *Crowe*, 608 F.3d at 440 (quoting *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)).

Here, there exists no evidence in the record on which a jury could find that M.A. DeAtley and the Montana Department of Transportation agreed to engage in unconstitutional conduct. Plaintiffs' bare assertions and speculation on that issue are insufficient to raise a genuine issue of material fact.

### 3. Government Compulsion or Coercion

The compulsion or coercion test considers whether the state has coercively influenced or significantly encouraged private conduct. *Kirtley*, 326 F.3d at 1094. Here, Plaintiffs have not presented any evidentiary materials listed in Rule 56(c) on which a jury could conclude that the Montana Department of Transportation compelled or coerced M.A. DeAtley to discharge sediment onto Plaintiffs' property.

### 4. Governmental Nexus

A private party's conduct may be deemed state action if "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001)). The nexus test generally requires evidence that the private actor is "'entwined with governmental policies,' or [...that the] government is 'entwined in [the private actor's] management or control[.]'" *Brentwood Academy*, 531 U.S. at 296 (citations omitted).

The Ninth Circuit has identified various factors to consider in determining whether there is a "close nexus" as follows: "(1) the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the

organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas*, 541 F.3d at 955.

Plaintiffs do not argue that the nexus test is satisfied in this case. On the record before the Court, there exists no evidence supporting any of the factors identified above that would suggest the existence of a "close nexus" between the Montana Department of Transportation and M.A. DeAtley's operation as a private corporation.

For the reasons stated, the Court is compelled to conclude that M.A. DeAtley's conduct at issue in this case cannot be deemed to have been committed under color of state law under any of the four tests discussed above. Consequently, Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed.

### B. Diversity of Citizenship Jurisdiction - Montana Law

Although the Court recommends dismissal of the sole claim on which federal question jurisdiction is founded, the Court also possess diversity of citizenship jurisdiction over Plaintiffs' claims advanced under Montana law as provided under 28 U.S.C. § 1332(a). Consequently, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th

Cir. 2002).

If an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted). The court should also rely on other persuasive authorities including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

### 1.    Public Nuisance

M.A. DeAtley moves for summary judgment dismissing Plaintiffs' public nuisance claim on the ground that Plaintiffs have not presented evidence sufficient to prove all of the essential elements of the claim. For the reasons discussed, the Court agrees.

Montana law defines a nuisance to include "[a]nything that is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property[.]"

Mont. Code Ann. § 27-30-101(1).  *See also Knight v. City of Missoula*, 827 P.2d 1270, 1279 (Mont. 1992).  A public nuisance, as opposed to a private nuisance, requires evidence establishing that the "nuisance is one which affects, at the same time, an entire community or neighborhood or any considerable number of persons[.]"  Mont. Code Ann. § 27-30-102(1).  A plaintiff must present competent, admissible evidence affirmatively establishing that the alleged nuisance affects other specific individuals sufficient to demonstrate that it affects "an entire community or neighborhood or any considerable number of persons."  *State ex rel. Dept. of Environmental Quality v. BNSF Railway Co.*, 246 P.3d 1037, 1043 (Mont. 2010).  Absent adequate evidence that an alleged nuisance has had harmful impacts on a larger community, a claim for public nuisance is subject to dismissal. *Id*.

Plaintiffs contend the discharge of sediment at issue in this case contaminated well water and caused the loss of wetlands on other properties in the Evaro Valley.  Plaintiffs believe that M.A. DeAtley's construction work pierced the protective clay layer covering the aquifer in the Evaro Valley thereby allowing contaminants to enter the ground water.  They further assert that the sediment plume discharged heavy metal contaminants into the ecosystem in the Evaro Valley.  For the reasons discussed, however, Plaintiffs have not presented

sufficient evidentiary materials in support of their assertions.

The only material Plaintiffs present in support of their public nuisance claim is a news article published in the Missoulian newspaper on March 7, 2010. The article reports that at least two families in the Evaro Valley have experienced murky well water contaminated with bacteria — contamination which those families believe was caused by M.A. DeAtley's conduct at issue in this case. Dkt. 53, Ex. 3.

The article contains statements made by either the reporter or individuals interviewed by the reporter that were not made under oath, and Plaintiffs offer the statements to prove the truth of the matters asserted in the statements. As such, the statements constitute hearsay. *See* Fed. R. Evid. 801(c) and 802. Absent an applicable exception to the hearsay rule, the content of newspaper articles is inadmissible hearsay. *Larez v. City of Los Angeles*, 946 F.2d 630, 642-43 (9th Cir. 1991). The court may not consider this inadmissible hearsay in ruling on a summary judgment motion. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). Thus, the public nuisance claim is properly dismissed.[1]

---

[1]Plaintiffs also submitted copies of photographs which they assert depict the loss of camas plants on their own property. But, because the photos do not show damage to any other wetland areas of other properties in the Evaro Valley, the photos do not constitute evidence of any harm caused to "an entire community or neighborhood or any considerable number of persons[.]" Mont. Code Ann. § 27-30-102(1).

## 2.    Strict Liability - Abnormally Dangerous Activity

M.A. DeAtley moves for summary judgment dismissing Plaintiffs' strict liability claim on the ground that it was not engaged in an abnormally dangerous activity as defined under Montana law.  The Court agrees.

The Montana Supreme Court has expressly "adopted the Restatement (Second) of Torts §§ 519 & 520 (1976) to determine whether an activity is abnormally dangerous."  *Chambers v. City of Helena*, 49 P.3d 587, 590 (Mont. 2002), overruled on other grounds by *Giambra v. Kelsey*, 162 P.3d 134 (Mont. 2007).  Section 519 provides as follows:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

*Restatement (Second) of Torts* § 519 (1977).

Section 520, in turn, lists the following factors used to determine whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;

> (b) likelihood that the harm that results from it will be great;

> (c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Restatement (Second) of Torts* § 520 (1977).  While one factor "may end up weighing more heavily than the others, a trial court's consideration of whether an activity is abnormally dangerous must at least explicitly consider all the factors listed in Restatement § 520."  *Chambers*, 49 P.3d at 592.  In doing so,

> [t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care.  In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.

*Restatement (Second) of Torts* § 520, comment f.

The issue of "whether an activity is abnormally dangerous, thereby subjecting the operator to strict liability, is a question of law for the courts to decide."  *Chambers*, 49 P.3d at 591.

Plaintiffs recognize that M.A. DeAtley's general road construction activities in connection with the U.S. Highway 93 and Evaro-McClure Road project were not abnormally dangerous activities.  Plaintiffs argue, however, that the specific

activities and tasks M.A. DeAtley performed relative to the demucking work adjacent to Plaintiffs' property was abnormally dangerous due to (1) the alleged presence of heavy metals and other contaminants at the site of the construction work, and (2) M.A. DeAtley's conduct in discharging or releasing water from the construction site carrying sediment and contaminants to Plaintiffs' property. In that respect, Plaintiffs narrowly define the alleged abnormally dangerous activity as the release or discharge of harmful material onto Plaintiffs' property. The Plaintiffs' argument is unpersuasive.

As instructed by *Chambers*, the Court turns now to the consideration of the six factors identified in *Restatement (Second) of Torts* § 520 in assessing whether M.A. DeAtley engaged in an abnormally dangerous activity.

> **a.     Existence of a high degree of risk of some harm to the person, land or chattels of others**

Plaintiffs assert there was a high degree of risk that their property would be subjected to harm due to the alleged existence of contaminants and heavy metals in the soil at the location of M.A. DeAtley's demucking work. In support of their claims Plaintiffs rely on a letter dated July 20, 2006, from an environmental testing contractor addressed to the Montana Department of Transportation regarding test results of soil samples taken from the railroad bed at the location of the construction site at issue in this case. Dkt. 53, Ex. 2. That letter, however, states

only that "[t]he investigation discovered limited petroleum hydrocarbon impacts to soil in the requested areas of investigation, but the extent and magnitude of impacts does not appear to warrant further investigation or removal of the impacted soil." *Id*. The specific test results of the soil samples reflected the existence of some "relatively minor concentrations" of extractable petroleum hydrocarbons, and "trace detections of volatile petroleum hydrocarbon concentrations." *Id*. Also, the samples contained some "Arsenic, Barium, Lead and Chromium [...] but generally below EPA [Preliminary Remediation Goals] for residential soils." *Id*. One sample contained Lead in excess of the Preliminary Remediation Goal (PRG) for residential soil, but the amount of Lead was below the PRG applicable to industrial soils. *Id*.

The Court finds that the information presented to the Montana Department of Transportation in the referenced letter does not demonstrate the requisite high degree of risk that some harm would be inflicted upon Plaintiffs' property. As stated in the letter, the limited level of concern due to the minimal presence of some contaminants did not warrant further investigation or removal of the soil.

Plaintiffs have not presented any further evidentiary materials listed in Rule 56(c) of any high degree of risk to their property. Therefore, this factor does not support a conclusion that M.A. DeAtley was engaged in an abnormally dangerous

activity.

**b.    Likelihood that the harm that results from it will be great.**

Plaintiffs have not presented any admissible evidentiary materials listed in Rule 56(c) demonstrating that the likelihood of any potential harm to their property due to M.A. DeAtley's activities was great.  Rather, Plaintiffs simply argue that the sediment plume impacted and reduced the camas plants growing on their property.

**c.    Inability to eliminate the risk by the exercise of reasonable care.**

Plaintiffs suggest that M.A. DeAtley's use of the straw wattles to filter the runoff water from the demucking site was not the best management practice, in part because the straw wattles became loose at the time the water and sediment discharged onto Plaintiffs' property.  Implicit in their suggestion is that the exercise of reasonable care may have successfully eliminated the risk that any contaminated sediment would reach their property.  Therefore, this factor does not support Plaintiffs' claim of strict liability.

**d.    Extent to which the activity is not a matter of common usage.**

M.A. DeAtley presented the affidavit testimony of Clayton Forsmann, an engineer and Project Manager for M.A. DeAtley, stating that demucking is a

common activity in highway construction.  Dkt. 43 at 2.  Plaintiffs have not

presented any evidentiary material listed in Rule 56(c) to dispute this assertion of

fact by M.A. DeAtley.  Therefore, this factor does not weigh in favor of Plaintiffs'

claim.

### e. Inappropriateness of the activity to the place where it is carried on.

M.A. DeAtley performed its road construction work within the Department

of Transportation's right of way in a rural area of Montana.  Plaintiffs have not

presented any evidentiary material listed in Rule 56(c) indicating that the location

of M.A. DeAtley's road construction and demucking work was inappropriate.

### f. Extent to which its value to the community is outweighed by its dangerous attributes.

As discussed, Plaintiffs have not presented sufficient evidentiary material

establishing that M.A. DeAtley's demucking work involved the requisite

dangerous attributes to support a strict liability theory of recovery.  Therefore, the

value to the community of the improvements M.A. DeAtley made to the roads and

highway necessarily outweighs the minimal dangerous attributes of the activities

in which M.A. DeAtley was engaged.

In summary, Plaintiffs have not presented sufficient evidentiary materials

that demonstrate the existence of a genuine dispute that M.A. DeAtley's road

construction and demucking activities were abnormally dangerous. Therefore, Plaintiffs' claim of strict liability fails, and should be dismissed.

### 3. __Montana Constitution__

Plaintiffs advance claims against M.A. DeAtley under provisions of the Montana Constitution. Specifically, they allege M.A. DeAtley is liable for violating their "right to a clean and healthful environment[.]" Mont. Const. art. II, § 3. Additionally, they allege M.A. DeAtley violated their rights to equal protection and due process. Mont. Const. art. II, §§ 4 and 16, respectively. Plaintiffs argue they are entitled to pursue a private right of action against M.A. DeAtley under these provisions of the Montana Constitution. For the reasons discussed, however, the Court concludes Plaintiffs have no private right of action under the circumstances of this case.

The Montana Supreme Court has consistently instructed that "courts should avoid constitutional issues whenever possible." *Sunburst School District No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1093 (Mont. 2007). Consequently, where adequate remedies exist under Montana statutory and common law, a plaintiff may not pursue a theory of recovery under the Montana Constitution against a private party defendant, as opposed to a defendant who is a governmental actor. *Id*. *See Dorwart v. Caraway*, 58 P.3d 128, 137 (Mont. 2002) (noting a great distinction

between wrongs committed by a private actor and wrongs committed under the authority of the state, and that common law causes of action are not adequate to remedy wrongs that were committed under the authority of the state).

Here, under the circumstances of this case, Plaintiffs cannot pursue claims under the Montana Constitution. M.A. DeAtley's conduct at issue in this case was not committed under color or authority of state law — M.A. DeAtley is a private party, not a government actor. Plaintiffs have other viable causes of action under Montana common and statutory law for negligence, private nuisance, and trespass. Plaintiffs have not established that those claims, if proven at trial, would not be adequate to provide remedies and compensation for any alleged damages they sustained as a result of the sediment plume at issue in this case. Therefore, Plaintiffs' claims under the Montana Constitution are subject to dismissal.

### 4.   **Breach of Contract**

Plaintiffs' Complaint includes a claim for breach of contract premised upon right of way agreements that exist between Plaintiffs and the Montana Department of Transportation relative to the subject road construction on U.S. Highway 93. The Complaint alleges the Montana Department of Transportation breached certain provisions of those agreements. Plaintiffs' Complaint, however, does not allege M.A. DeAtley is a party to those agreements, or that it is liable for the

breach of any contract.

M.A. DeAtley moves for summary judgment dismissing Plaintiffs' breach of contract claim on the ground that there exists no contractual agreement between it and Plaintiffs. Clayton Forsmann's affidavit states that no contract exists between the parties. Dkt. 43 at 2.

In response to M.A. DeAtley's summary judgment motion, Plaintiffs rely solely upon the right of way agreements they entered with the Montana Department of Transportation as alleged in the Complaint. They argue that the Montana Department of Transportation engaged M.A. DeAtley to perform work in the highway right of way, but the work was not consistent with the terms of the right of way agreements. Plaintiffs further suggest that M.A. DeAtley knew its construction work was inconsistent with those agreements. Therefore, Plaintiffs argue that because M.A. DeAtley performed its nonconforming work as the agent of the State of Montana, it "constructively breached" provisions of the right of way agreements that exist between Plaintiffs and the Montana Department of Transportation. Plaintiffs' arguments, however, lack legal merit.

The undisputed evidence presented in this case establishes that no contract exists between Plaintiffs and M.A. DeAtley, and that M.A. DeAtley is not a party to the right of way agreements that Plaintiffs contend were breached. As a matter

of law, a plaintiff cannot sustain a cause of action for breach of contract against a defendant who is not a party to the contract at issue in the lawsuit. *Kinion v. Design Systems, Inc.*, 641 P.2d 472, 475 (Mont. 1982). *See also Electron Energy Corpration v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991) (noting that it is "fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract").

Additionally, Plaintiffs' reliance on agency law does not support their breach of contract claim. Under general agency law, M.A. DeAtley's alleged status as an agent of the State of Montana would merely subject Montana, as the principal, to liability for acts committed by the agent. *See e.g. H-D Irrigating, Inc. v. Kimble Properties, Inc.*, 8 P.3d 95, 106 (Mont. 2000). But, as a matter of law, M.A. DeAtley, as the agent, cannot be held liable for the State of Montana's conduct, as the principal, that allegedly violated the terms of the right of way agreements with the Plaintiffs.

### 5. <u>Damage to Property</u>

M.A. DeAtley requests summary judgment concluding that Plaintiffs cannot establish the existence of any damage to their property as required to support their remaining tort law claims advanced under Montana law — negligence, private nuisance, and trespass. It argues that the relevant issues in this case as to the

existence of contaminants on Plaintiffs' property, the environmental damage allegedly caused to their property, and the alleged reduction to the monetary value of their real property are all matters beyond the common experience of jurors and, as a matter of law, require expert witness testimony. M.A. DeAtley contends Plaintiffs are not adequately qualified as expert witnesses under Fed. R. Evid. 702 to testify relative to the referenced damage issues, and it states that Plaintiffs have not disclosed any qualified expert witness that they intend to use at trial as required under Fed. R. Civ. P. 26(a)(2)(A).[2]

M.A. DeAtley is not entitled to judgment as a matter of law as to the existence of any damages to Plaintiffs' property. Plaintiffs' ability to present evidence of damages to their property would not be foreclosed if they are not permitted to present any expert witness testimony. The typical measure of damage to real property — the difference in the market value of real property immediately before and immediate after damage occurs — is not the only measure of damage available under Montana law. *Lampi v. Speed*, 261 P.3d 1000, 1004 (Mont. 2011). A plaintiff may instead, in appropriate cases, elect to recover the cost of reasonable restoration to the damaged property. *Lampi*, 261 P.3d at 1004-5

---

[2]The specific issue of whether Plaintiffs will be permitted to present expert witness testimony in support of their claim for damages will be addressed in M.A. DeAtley's pending motion in limine.

(quoting *Restatement (Second) of Torts* § 929 (1979)).  "An 'appropriate case' for restoration damages involves temporary damage and reasons personal to the plaintiff to restore property to its former condition."  *Lampi*, 261 P.3d at 1005 (citing *Restatement (Second) of Torts* § 929, comment b).  A damage is temporary if the property can be restored to substantially the condition in which it existed before the injury, and sufficient personal reasons to restore the property may exist where a plaintiff demonstrates a desire to continue using the property rather than sell it.  *Lampi*, 261 P.3d at 1006-7.

Plaintiffs seek compensation for the restoration of their property.  Dkt. 1 at 27.  Therefore, Plaintiffs may be able to present testimony establishing those restoration damages as the appropriate measure of their damages consistent with *Lampi*.

Additionally, Montana law recognizes that "emotional distress damages may result from negligent or intentional damage to property arising from interference with the use and enjoyment of land."  *Maloney v. Home and Investment Center, Inc.*, 994 P.2d 1124, 1137 (Mont. 2000).  Here, Plaintiffs request compensation for "[a]nnoyance and discomfort" stemming from the loss of use and enjoyment of their property.  Dkt. 1 at 26.  Thus, Plaintiffs may testify as to the loss of the use and enjoyment of their property, and the resulting emotional

distress they experienced, as elements of compensable damages.

Plaintiffs are not foreclosed from presenting evidence of their damages in support of their surviving state law tort claims. M.A. DeAtley's motion should be denied in this respect.

## IV.  **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that M.A. DeAtley's motion for partial summary judgment should be GRANTED with respect to Plaintiffs' claims of public nuisance, strict liability, breach of contract, and their claims for violations of the Montana Constitution and the United States Constitution. Those claims should be DISMISSED.

M.A. DeAtley's motion, however, should be DENIED as to Plaintiffs' claim for damages in support of their claims for negligence, private nuisance, and trespass.

DATED this 27th day of December, 2011.

  /s/ Jeremiah C. Lynch  
Jeremiah C. Lynch  
United States Magistrate Judge